**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kimberly Dean,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-25-08149-PCT-DWL<br>**ORDER** |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 13), the Commissioner's answering brief (Doc. 15), and Plaintiff's reply (Doc. 16), as well as the Administrative Record (Doc. 8, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I. Procedural History

On June 8, 2022, Plaintiff filed an application for benefits, alleging a disability onset date of August 14, 2021. (AR at 41.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels. (*Id.*) On May 22, 2024, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 41-55.) The Appeals Council later denied review. (*Id.* at 1-3.)

II. The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ

follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. <u>The ALJ's Decision</u>

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work

activity since the alleged onset date and that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine status post anterior cervical discectomy in January 2022 and corpectomy with fusion in August 2022 and degenerative disc disease of lumbar spine." (AR at 43.) The ALJ also determined that Plaintiff had the non-severe physical impairments of hypertension, hypothyroidism, left Achilles tendinitis, ganglion cyst of the right ankle, and obesity and the non-severe mental impairments of depression and anxiety. (*Id.* at 44-46.) In this portion of the decision, the ALJ discussed the opinions of certain medical providers, concluding that Dr. Mastikian's opinions were not persuasive and that the prior administrative psychological findings were persuasive. (*Id.* at 46-47.)

Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 48.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to lift and/or carry 20 pounds occasionally and ten pounds frequently. She can sit, stand and/or walk for about six hours of an eight-hour workday. While she cannot climb ladders, ropes, and scaffolds, she remains capable of frequently climbing ramps and stairs, stooping, kneeling and crouching as well as occasionally crawl. She can occasionally reach overhead. She cannot perform any job duties requiring driving a motor vehicle.

(*Id.*)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 52.) The ALJ also evaluated opinion evidence from additional medical sources, concluding as follows: (1) Mark Priola, NP-C ("not persuaded by this opinion"); and (2) prior administrative medical finding made on initial determination ("somewhat persua[sive]"). (*Id.* at 53.) Additionally, the ALJ considered a third-party opinion but deemed it unpersuasive. (*Id.*)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that

although Plaintiff was unable to perform her past relevant work as a registered nurse, she was capable of performing three other jobs that exist in significant numbers in the national economy: (1) school nurse; (2) industrial nurse; and (3) office nurse. (*Id.* at 53-55.) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 55.)

IV. <u>Discussion</u>

Plaintiff raises three issues on appeal: (1) whether the ALJ erred at step two by characterizing her anxiety and depression as non-severe; (2) whether the ALJ failed to account for her mental impairments in the RFC; and (3) whether the ALJ failed to properly evaluate the opinions of NP Priola. (Doc. 13 at 1.) As a remedy, Plaintiff argues that the denial of her claim "should be reversed and remanded for further administrative proceedings." (*Id.* at 25.)

**A. The Step-Two Finding Of Non-Severity**

1. <u>The Parties' Arguments</u>

Plaintiff contends the ALJ erred during step two "in determining that [her] mental impairments of anxiety and depression are non-severe." (Doc. 13 at 14.) More specifically, Plaintiff argues:

> In order to find that [Plaintiff's] depression and anxiety were non-severe, the ALJ relied on the non-examining state agency psychological reviewers Drs. Stern and Dilger, who found that Plaintiff had only a mild limitation in concentrating, persisting, and maintaining pace as well as in adapting or managing herself. The ALJ found that consultative examiner Dr. Mastikian's February 5, 2023 report, indicating limited ability to interact with the public co-workers, and supervisors, to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness consistently and independently of supervision and supports; and limited ability to respond appropriately to changes in a work setting and to remain aware of normal work hazards and take appropriate precautions as needed, was non-persuasive. The ALJ explained that Dr. Mastikian's opinion was nonpersuasive because it was "not consistent with the prior administrative psychological findings as well as vague not offering any significant functional limitations while not being supported by the medical record showing limited treatment with management of her mood symptoms with sporadic medication management." However, while Dr. Mastikian's opinion was not consistent with the administrative findings of the nonexamining

> physicians Drs. Stern and Dilger, Dr. Mastikian's opinion was consistent with the medical record showing that Plaintiff's depression and anxiety were chronic conditions and that, contrary to the ALJ's statement that treatment of her mood symptoms was limited and sporadic, [Plaintiff's] depression and anxiety were described by Dr. Rast as chronic, moderate, and recurrent, and she was consistently prescribed medication for treatment of these conditions. The ALJ's characterization of the case record with regard to consistency with Dr. Mastikian's opinion is, therefore, incomplete and cherry picked.

(*Id.* at 16-17.) Plaintiff further contends that "the ALJ did not provide a supportability analysis of Dr. Mastikian's opinion based on his findings on examination of [Plaintiff]. This is error, as it does not provide meaningful explanation of the ALJ's reasoning for finding Dr. Mastikian's opinion non-persuasive." (*Id.* at 18.)

In response, the Commissioner contends that "Plaintiff does not challenge any of the ALJ's step findings showing that Plaintiff's mental impairments caused no more than 'mild' limitations in the four broad areas of functioning. Instead, Plaintiff asserts that the ALJ's step two finding was flawed because the ALJ found that the medical opinion of Robert Mastikian,[1] Psy.D., asserting Plaintiff had mental limitations was not persuasive. But here Plaintiff is also mistaken because the ALJ's finding was consistent with the regulations and supported by substantial evidence." (Doc. 15 at 4-5.) According to the Commissioner, the ALJ permissibly discounted Dr. Mastikian's opinions because (1) they were "vague" and did not describe any significant functional limitations; (2) "Dr. Mastikian offered no explanation or citation to medical evidence to support [his] opinion," and thus the opinion was "not . . . supported"; and (3) "the ALJ explained that Dr. Mastikian's opinion was 'not consistent with the prior administrative psychological findings,'" which constituted an express consideration of the consistency factor. (*Id.* at 5-8.) As for the second point, the Commissioner elaborates: "Plaintiff also asserts that the AJ did not sufficiently explain how Dr. Mastikian's opinion was not supported. But the ALJ here accurately explained that Dr. Mastikian offered no support for the opinion—no more

[1] Although the Commissioner spells this provider's last name as "Mstikian," the record indicates that the proper spelling is "Mastikian." (AR at 624, 629.) The Court has used "Mastikian" throughout this order.

explanation was required." (*Id.* at 8.)

In reply, Plaintiff clarifies that her "argument that the ALJ improperly concluded that Plaintiff's mental impairments of depression and anxiety were non-severe must, by logical necessity, also include the arguments that (1) Plaintiff's limitation in one or more functional areas is greater than mild and/or (2) the evidence otherwise indicates that there is more than a minimal limitation in [her] ability to do basic work activities" (Doc. 16 at 2); argues in relation to the supportability factor that "the ALJ did not explain that Dr. Mastikian offered no support of his opinion—rather, the ALJ acknowledged that Dr. Mastikian based his opinion on clinical findings of his consultative psychological examination" (*id.* at 3-4); acknowledges that "Dr. Mastikian did not outright state that the opinion contained in his February 20, 2023 medical source statement was based on his report dated February 20, 2023" but argues that the opinion "is supported by and flows from the clinical findings of that report" (*id.* at 4-6); and argues in relation to the consistency factor that "[m]issing from the ALJ's analysis of consistency are records showing that Plaintiff's depression and anxiety were chronic conditions and that, contrary to the ALJ's statement that treatment of her mood symptoms was limited and sporadic, [Plaintiff's] depression and anxiety were described by Dr. Rast as chronic, moderate, and recurrent, and she was consistently prescribed medication for treatment of these conditions" (*id.* at 6-7).

2. <u>Analysis</u>

"As this Court has observed in earlier cases, Ninth Circuit law is not a model of clarity concerning how to evaluate claims of step-two error. Some cases suggest that, although it is error for an ALJ to fail to characterize a particular impairment as 'severe' during step two, the error can be disregarded as harmless if the ALJ properly addresses the impairment during later steps. Other decisions suggest that a claimant can't complain about an ALJ's failure to identify a particular impairment as 'severe' during step two so long as the ALJ determined the claimant also had other impairments that so qualify. At any rate, the dispositive issue is whether the ALJ properly evaluated the evidence and

testimony concerning that condition during later steps and factored that condition into the RFC." *Harvey v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5822641, *2 (D. Ariz. 2021) (cleaned up).

Given these principles, Plaintiff is not entitled to reversal based on her argument that the ALJ should have characterized her mental impairments as severe during step two. Any error in that determination was harmless because the ALJ determined that some of Plaintiff's other impairments were severe and thus proceeded to the later steps of the disability analysis. *See, e.g., Skelton v. Comm'r of Soc. Sec. Admin.*, 2023 WL 5949655, *3 (D. Ariz. 2023) ("The dispositive issue here is whether Plaintiff has established the existence of harmful error with respect to the ALJ's RFC formulation during later steps. The dispute over the step-two severity characterization is a red herring."). This determination does not, to be clear, foreclose Plaintiff from obtaining relief based on her criticisms of the ALJ's assessment of the opinion evidence related to her mental impairments. It simply means that Plaintiff must establish that the ALJ erred during a later step of the analysis. That issue is addressed in Part IV.B below.

### B. The Lack Of Mental Impairments And Limitations In The RFC

#### 1. The Parties' Arguments

As noted, Plaintiff's first assignment of error, although characterized as a claim of step-two error, is essentially an argument that the ALJ improperly discredited the opinions of Dr. Mastikian regarding her mental impairments. To that end, in her second assignment of error, Plaintiff contends that "[t]he ALJ erred in failing to account for Plaintiff's mental impairments and limitations in the RFC assessment." (Doc. 13 at 19.) According to Plaintiff, "the ALJ erred by failing to consider the limiting effects of Plaintiff's mental impairments, severe or non-severe, in the RFC assessment. Furthermore, the ALJ failed to make the 'more detailed assessment' of Plaintiff's mental impairments at steps four and five." (*Id.* at 20-21.) Plaintiff adds that "[c]ourts have acknowledged that even mild mental functional limitations could preclude a claimant from performing their past relevant work especially if that work is semi-skilled or skilled." (*Id.* at 21.)

In response, the Commissioner argues that Plaintiff "conflates the step two finding about the mental impairments' non-severity with the residual functional capacity finding, which is conducted at a later step of the sequential evaluation." (Doc. 15 at 9.) Citing *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007), the Commissioner contends that "mild—or even moderate—mental limitations need not necessarily be included in the residual functional capacity." (*Id.* at 10-11.) Finally, the Commissioner contends that "the ALJ did consider and explain the rationale for not incorporating any mental limitations. The ALJ's discussion was sufficient." (*Id.* at 11-12.)

In reply, Plaintiff contends that her first assignment of error, "by logical necessity, also include[s] the arguments that (1) [her] limitation in one or more functional areas is greater than mild and/or (2) the evidence otherwise indicates that there is more than a minimal limitation in [her] ability to do basic work activities." (Doc. 16 at 7-8.) Plaintiff also clarifies that her "argument is not that the ALJ was required to include restrictions arising from mild mental limitations in the four broad areas of functioning in the RFC. [Her] argument is that the ALJ failed to consider the limiting effects of [her] mental impairments, severe or non-severe, in the RFC assessment, and that the ALJ failed to make the 'more detailed assessment' of [her] mental impairments at Steps Four and Five." (*Id.* at 8.) Citing *Brengan v. Kijakazi*, 2024 WL 626705 (E.D. Cal. 2024), Plaintiff argues that "while the ALJ discussed the medical record as to [her] psychological conditions, and found that she had mild limitations in two broad areas of functioning, the ALJ did not explain the rationale for not incorporating any mental limitations in his decision . . . ." (*Id.* at 8-9, citations omitted.)

2. <u>Discussion</u>

The Court construes Plaintiff's briefing as raising two related, if distinct, challenges to the ALJ's failure to include any mental limitations in the RFC: first, the ALJ erred by not including Dr. Mastikian's opined-to mental limitations; and second, the ALJ erred by acknowledging during step two that Plaintiff had at least mild limitations in certain areas of functioning but then failing, without explanation, to incorporate any mental limitations

into the RFC.

As for the first challenge, "[w]hen determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at face value. Rather, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. 2024) (cleaned up). In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations apply to applications filed on or after March 27, 2017, and are therefore applicable here. The new regulations provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a). Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

The Ninth Circuit has confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision,

including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. . . . [t]he ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.* (citation omitted).

Applying these standards, the Court finds no harmful error in the ALJ's decision to discredit the opinions of Dr. Mastikian. The ALJ's analysis as to Dr. Mastikian was as follows:

> In February 2023, she underwent a psychological consultative evaluation with Robert Mastikian, Psy.D. She reported depression since 2014 being prescribed medication form her general practitioner with a history of anxiety that she reported had resolved. However, she also reported anxiety, depression and being under stress; as well as being forgetful with low motivation and being distractible. Additionally, she stated that she could not work due to physical issues causing frustration and anxiety. Dr. Mastikian observer her anxiety evidenced by the claimant appearing as hyperverbal and fidgety with circumstantial speech. She stated that she lived with her adult daughter and enjoying watching television, reading and working on a tower garden. She reported being able to run errands daily but had difficulty driving due to neck pain. She presented with a normal orientation, attention, language and visual spatial ability, concentration, eye contact, thought content, thought process, fund knowledge, insight, judgment and immediate, delayed and working memory. While she her mood was anxious with a constricted and restrictive affect, she was cooperative. She was also noted as being hyperverbal with a circumstantial speech. She reported difficulty with her personal care, dressing, household chores, ability to drive and sleep due to pain while remaining capable of managing her finances. Dr. Mastikian diagnosed her with an anxiety disorder without any episodes of

> decompensation and intact cognitive capabilities. Based upon the clinical findings, Dr. Mastikian assessed that she did not have any limitations in understanding, memory, sustained concentration and persistence with a limited ability interacting with the public, co-worker and supervisors but able to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness consistently and independent of supervision and supports. Dr. Mastikian also stated that she was limited with adaptation impacting their ability to respond appropriately to changes in a work setting and remain aware of normal work hazards and take appropriate precautions as needed. (Exhibit 8F)
>
> Two non-examining State agency psychological consultants reviewed the claimant's medical record in early to mid-2023 with both consultants determining that she only had a mild limitation in concentrating, persisting and maintaining pace as well as in adapting or managing herself or a non-severe mental impairment. (Exhibit 2A and 3A)
>
> *The undersigned is not persuaded by Dr. Mastikian's opinion as it is not consistent with the prior administrative psychological findings as well as vague not offering any significant functional limitations while not being supported by the medical record showing limited treatment with management of her mood symptoms with sporadic medication management*. However, the undersigned is persuaded by the prior psychological administrative findings as these findings are consistent with each other while also being supported by the medical record showing that she only reported depressive symptoms in early 2024 with her mood issues appearing well managed with limited medication management.

(AR at 46-47, emphasis added.)

As the italicized text above shows, the ALJ expressly considered the consistency and supportability factors when evaluating Dr. Mastikian's opinions, as required under the new regulations. *Woods*, 32 F.4th at 792 ("The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

The ALJ's conclusion as to each factor was also supported by substantial evidence. Beginning with the consistency factor, the ALJ correctly noted that Dr. Mastikian's opinions regarding Plaintiff's mental limitations (AR at 630-61) were inconsistent with the

opinions of the state agency reviewers, who found only mild limitations in certain functional areas (AR at 88-89, 95-96). Although Plaintiff argues this approach amounted to improper cherry-picking (Doc. 13 at 16-17), courts have held that an ALJ may permissibly rely on this sort of conflict as the basis for an adverse consistency finding. *Reyes v. Comm'r of Soc. Sec. Admin.*, 2025 WL 2586139, *8 (D. Ariz. 2025) (citing cases).

The ALJ also stated that Dr. Mastikian's opinions were "not . . . supported by the medical record showing limited treatment with management of her mood symptoms with sporadic medication management" and were "vague not offering any significant functional limitations." (AR at 47.) Although the former statement is not really an evaluation of the supportability factor, as it contrasts Dr. Mastikian's opinions with the medical records compiled by other providers (and is thus better conceptualized as an adverse consistency finding), the latter statement served as a permissible basis for discrediting Dr. Mastikian's opinions under the supportability factor. Indeed, in the "Psychological/Psychiatric Medical Source Statement," Dr. Mastikian acknowledged that Plaintiff had no major impairments in two of the relevant functional areas ("understanding and memory" and "sustained concentration and persistence") but then stated, in relation to the "social interaction" functional area, that "[t]here is sufficient evidence to conclude that the severity of the claimant's mental health condition *continues to impact their ability* to interact appropriately with the general public, supervisors and coworkers, their ability to maintain socially appropriate behavior and their ability to adhere to basic standards of neatness and cleanliness consistently and independent of supervision and supports." (*Id.* at 630, emphasis added.) Similarly, in relation to the "adapting to change" functional area, Dr. Mastikian wrote: "There is sufficient evidence to conclude that the severity of the claimant's mental health condition *is impacting their ability* to respond appropriately to changes in a work setting and their ability to remain aware of normal work hazards and take appropriate precautions as needed." (*Id.*, emphasis added.) The problem with these assessments is that they fail to specify Plaintiff's functional limitations—the opinion that Plaintiff's mental impairments "impact" her ability to engage in social interaction and

adapt to change provides no insight into how severely she is limited in those areas. Time and again, the Ninth Circuit has held that an ALJ may permissibly decline to follow such a vague and poorly reasoned opinion. *See, e.g., Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("[T]he ALJ found that Dr. Zipperman's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC."); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("Dr. Manos' mere statement that Meanel experienced *some* diminution in her concentration skills falls short of an informed opinion that Meanel's pain and diminished concentration skills would significantly interfere with her ability to work."). *See also Bedson v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1198830, *8 (D. Ariz. 2019) ("The vagueness of Dr. Rubin's opinion and Dr. Rubin's failure to indicate any specific limitations resulting from Bedson's impairments each constituted a specific and legitimate reason to reject his opinion.").[2]

This leaves Plaintiff's second challenge. To set the stage, the record contained three potential sources of information regarding Plaintiff's mental impairments: (1) Dr. Mastikian's opinions; (2) the opinions of the state agency reviewers; and (3) Plaintiff's testimony. As discussed above, the ALJ permissibly discredited Dr. Mastikian's opinions. The ALJ also discredited Plaintiff's symptom testimony, and Plaintiff does not challenge that determination on appeal. Finally, the ALJ credited the opinions of the state agency reviewers, both of whom indicated that Plaintiff would have mild limitations in the areas of "[c]oncentrate, persist, or maintain pace" and "[a]dapt or manage oneself." (AR at 88-89, 95-96.) The disputed issue is whether the ALJ erred by failing to include those (or related) limitations in the RFC.

---

[2] The Court notes that the Commissioner's answering brief cites an additional case, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217 (9th Cir. 2010), in support of this principle and includes the following purported quotation from *Turner*: "[w]hen an opinion does not prescribe any specific limitations on a claimant, an ALJ need not assume that the medical source intended to include any limitations." (Doc. 15 at 6.) This language does not appear in *Turner*, which raises a concern that the Commissioner has provided an AI-hallucinated quotation.

On the one hand, an ALJ is not required to incorporate any mental-related limitations into an RFC simply because the ALJ determined, during step two of the sequential analysis, that the claimant had mild limitations. *See, e.g., Baker v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2914369, *3 (D. Ariz. 2022) ("Plaintiff argues the ALJ committed harmful error because she determined he had mild limitations at step two of the five-step process, but failed to incorporate those limitations into his RFC. The ALJ did not err because she assessed Plaintiff's nonsevere mild limitations as having minimal impact on his ability to work and considered his mild limitations in calculating Plaintiff's RFC."); *Marulli v. Astrue*, 2010 WL 3894612, *3 (S.D. Cal. 2010) ("[T]he ALJ found at an earlier step in the disability-determination process that Plaintiff's mental impairment . . . caused mild mental limitations. To the extent that the ALJ did not include his findings of mild mental limitations [in the RFC], . . . the ALJ was not required to do so."). *Cf. Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) ("Bray offers no authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities.").

On the other hand, an ALJ must still provide an explanation for why any mild limitations found at step two were omitted from the RFC. *See, e.g.*, *Brengan v. Kijakazi*, 2024 WL 626705, *7 (E.D. Cal. 2024) ("While both plaintiff and the court agree that there is no requirement that a finding of mild limitations in the [Step 2] analysis mandates the presence of non-exertional limitations at Step 4, the ALJ is not free to completely ignore his own findings of mild limitations in the RFC analysis. The ALJ in this case concludes that plaintiff has mild non-exertional limitations, but fails to include any such limitations in the RFC *without explanation*. This is error.") (emphasis added); *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021 (D. Ariz. 2019) ("Although the ALJ determined Solomon had mental limitations that caused mild limitation in social functioning and concentration, persistence, and pace, the ALJ's order provides no indication that the ALJ considered those limitations when calculating Solomon's RFC during Step 4. This was error."). As one court put it: "[A]t step four, an ALJ is not required

to *include* every limitation assessed at step two in the plaintiff's RFC. Instead, the ALJ satisfies his obligations at step four so long as he *considers* every limitation assessed at step two to determine whether that limitation impairs the plaintiff's overall capacity to perform work-related activities in a work setting." *Janet Margaret G. v. Saul*, 2020 WL 2039944, *7 (C.D. Cal. 2020).

The ALJ provided the required explanation here. The ALJ began the step-two analysis by identifying "the 'paragraph B' criteria" and using those criteria to determine whether Plaintiff's mental impairments were severe or non-severe. (AR at 45-46.) Critically, the ALJ then stated: "The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis*." (*Id.* at 46, emphasis added.) The ALJ then proceeded to address Dr. Mastikian's opinions and the opinions of the state agency reviewers. (*Id.* at 46-47.) Courts have concluded that this sort of prefatory language and explanation is sufficient to show that the ALJ considered the mental limitations found at step two when formulating the RFC, even if those limitations were ultimately omitted from the RFC. *See, e.g., Baker*, 2022 WL 2914369 at *3 ("Plaintiff's argument fails because the ALJ considered his mild limitations in determining his RFC and provided her underlying reasoning. At step two of the five-step process, the ALJ determined that Plaintiff's mild impairments create a 'minimal limitation in the claimant's ability to do work related activities.' One paragraph later, the ALJ indicated that her reasoning at step two was incorporated into her calculation of Plaintiff's RFC, stating that 'the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.' Further, in the ALJ's discussion of Plaintiff's RFC, she acknowledges that he has reported 'difficulty . . . remembering,

completing tasks, concentrating, understanding, following instructions, and getting along with others.' The ALJ considered Plaintiff's limitations in determining his RFC in a manner that allowed for 'meaningful review' and thus did not err.") (citations omitted); *Vandiver v. Colvin*, 2016 WL 8787118, *6 (D. Nev. 2016) ("[T]he ALJ concluded her section conducting the Step 2 analysis by expressly incorporating the impairments outlined therein into her RFC determination: 'the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional capacity.' Given the ALJ's consideration of Plaintiff's mild limitation during the Step 2 analysis and her incorporation of that analysis into the RFC assessment, the undersigned is unpersuaded by Plaintiff's arguments that the ALJ erred by failing to consider this mild limitation in assessing the RFC."); *Webb v. Colvin*, 2013 WL 5947771, *12 (D. Nev. 2013) ("The ALJ specifically noted at the conclusion of his step two analysis that his RFC assessment 'reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.' Although the ALJ did not extensively discuss Plaintiff's mental impairments at step four, he thoroughly discussed the evidence supporting his findings at step two and incorporated them by reference in his RFC analysis. An ALJ is required to discuss and evaluate evidence that supports his conclusion; he is not required to do so under any specific heading. The court finds the ALJ considered Plaintiff's mild mental limitations in his RFC analysis.") (citations omitted).

### C. The ALJ's Evaluation Of The Opinions Of NP Priola

#### 1. <u>Relevant Background</u>

On October 10, 2023, Mark Priola, NP-C responded to an inquiry from Lincoln Financial Group seeking information regarding Plaintiff's functional capacity. (AR at 843.) In the relevant portion of the response form, NP Priola wrote that Plaintiff "cannot sit for only 30 minutes," wrote that Plaintiff "need[s] to lay down every hour for 30-60 minutes," and did not express any disagreement with Lincoln Financial Group's assessments that Plaintiff could not "lift[] greater than 15 pounds, occasionally" and could not engage in "bending, stooping, or climbing." (*Id.*) NP Priola also wrote: "Awaiting

results of recent MRI through neurosurgeon." (*Id.*)

The ALJ deemed NP Priola's opinions unpersuasive. (*Id.* at 53.) The ALJ's full explanation was as follows:

> The undersigned is aware of a medical source statement provided by Mark Priola, NP-C, a nurse practitioner, dated October 19, 23, stating that the claimant was limited to lifting no more than 15 pounds occasionally while being able to sit for 30 minutes based needing to lie down every hour for 30 minutes to an hour with occasional standing, walking and reaching but no stooping, bending or climbing. The undersigned is not persuaded by this opinion as it is not consistent with the prior administrative medical findings while also not being supported by the medical record showing improvement in her cervical condition after her last surgery in August 2022 evidence by her physical findings showing moderate weakness of her cervical rotation and side bending to the left but with good use of her left shoulder being able to use it for most functional activities as well as a limited range of motion of her neck with decreased motor strength of 4/5 but with a normal range of motion of her left shoulder with motor strength at a 4/5. Further, it is not supported by the management of her lumbar pain with physical therapy and infrequent flare-ups.

(*Id.*)

2. <u>The Parties' Arguments</u>

Plaintiff argues the ALJ's analysis regarding NP Priola was deficient because "[t]he ALJ failed to explain how the physical findings of the prior administrative findings and in the physical therapy note on November 7, 2023 renders the restrictions provided by NP Priola unpersuasive. The ALJ's statements that NP Priola's opinion was not supported by the management of her lumbar pain with physical therapy and infrequent flare-ups, and that he had reviewed post-2022 records showing improvement in her cervical condition, are vague and non-specific and do not allow for meaningful review." (Doc. 13 at 23-24.) Plaintiff contends that NP Priola's opinions are "consistent with the continued objective findings at L5-S1 and L4-5 demonstrated via MRI of September 14, 2023, which was unavailable to the state agency medical reviewers. [They are] also consistent with findings from Dr. Spitalieri, which found objective symptoms of Plaintiff's cervical and lumbar conditions throughout his treatment records. Lastly, NP Priola's opinion, contrary to the

ALJ's vague assertion that the November 7, 2023 physical therapy note did not support the limitations provided by NP Priola, is consistent with the objective findings at that appointment, which demonstrated reduced cervical range of motion and reduced strength on manual muscle testing, and which stated that Plaintiff had not met the goal of being able to return to her previous level of function with minimal limitations." (*Id.* at 25.)

In response, the Commissioner defends the sufficiency of the ALJ's rationale. (Doc. 15 at 12-16.) As for the supportability factor, the Commissioner contends that, "[f]or example, despite opining that Plaintiff could lift no more than 15 pounds occasionally, Mr. Priola offered no explanation for such limitation. In fact, Mr. Priola made no mention of Plaintiff's strength testing or cite to any abnormal musculoskeletal findings. Similarly, although Mr. Priola opined that Plaintiff needed to lay down every hour for 30-60 minutes, he gave no explanation to support such limitation. Indeed, Mr. Priola suggested he did not have all medical information needed, as he stated that he was '[a]waiting results of recent MRI' test results." (*Id.* at 13.) As for the consistency factor, the Commissioner contends the ALJ permissibly found that NP Priola's opinions were inconsistent with the prior administrative medical findings, which "found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently." (*Id.* at 13-14, citing AR 97-99.) Last, the Commissioner contends the ALJ's explanations were sufficiently specific. (*Id.* at 14-15.)

In reply, Plaintiff accuses the Commissioner of providing an "oversimplification" of her criticism of the ALJ's lack of specificity (Doc. 16 at 9-10); reiterates her earlier argument that the ALJ failed to explain why the November 7, 2023 therapy note was inconsistent with NP Priola's opinions (*id.* at 10-11); and argues that, "[u]ltimately, the ALJ failed to properly evaluate the whole record and explain why abnormal clinical findings failed to offer support for NP Priola's opinion" (*id.* at 12).

3. <u>Analysis</u>

The Court finds no harmful error in the ALJ's evaluation of NP Priola's opinions. The ALJ expressly considered the consistency and supportability factors (AR at 53) and the ALJ's finding as to each factor was supported by substantial evidence. Beginning with

the consistency factor, the ALJ correctly identified a conflict between NP Priola's opinions that Plaintiff could not engage in "bending, stooping, or climbing" and could not "lift[] greater than 15 pounds, occasionally" (*id.* at 843) and the state agency reviewer's opinions that Plaintiff could "occasionally lift and/or carry . . . 20 pounds" and could "frequently" engage in "stooping." (*id.* at 97). In her briefing on appeal, Plaintiff makes no effort to address this inconsistency, instead arguing that the ALJ failed to provide a sufficiently detailed explanation regarding a different perceived inconsistency. But any error regarding the other perceived inconsistency was harmless in light of the ALJ's identification of the inconsistency between NP Priola's opinions and the opinions of the state agency reviewer.

Turning to the supportability factor, it was permissible for the ALJ to discount NP Priola's opinions due to his failure to provide any explanation for his opined-to limitations, failure to identify any objective evidence that supported those limitations, and acknowledgement that he did not have all of the medical information he needed. 20 C.F.R. § 404.1520c(c)(1) ("Supportability. The more relevant the objective medical evidence and *supporting explanations* presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.") (emphasis added).

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 22nd day of September, 2026.

Dominic W. Lanza
United States District Judge